# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| UNICORN ENERGY GMBH, | ) |
| Plaintiff, | ) |
| v. | ) C.A. No. _____ |
| TESLA, INC. | ) DEMAND FOR JURY TRIAL |
| Defendant. | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Unicorn Energy GmbH ("Unicorn") hereby alleges, for its Complaint against Defendant Tesla, Inc. ("Tesla"), on personal knowledge as to Unicorn's own actions and on information and belief as to the actions of others, as follows:

## OVERVIEW OF THE ACTION

1. This is a patent infringement action brought under 35 U.S.C. § 271 arising from Tesla's infringement of Unicorn's United States Patent No. 10,008,869 by the manufacture, use, and sale of, and offer to sell, the Powerpack, a fully integrated, AC-connected, energy storage system. Tesla uses Unicorn's patented energy storage technology in Tesla's Powerpack. Unicorn brings this action to remedy Tesla's infringement of Unicorn's innovative, patented technology.

## THE PARTIES

2. Unicorn, previously known as EnergyTube Holding GmbH and as Ropa Engineering GmbH, is a foreign company organized and existing under the laws of Germany, having a principal place of business at Universitätspark 1, 73525 Schwäbisch-Gmünd, Germany.

3. Tesla is a corporation organized and existing under the laws of the state of Delaware, having a principal place of business at 3500 Deer Creek Road, Palo Alto, CA 94304.

**JURISDICTION AND VENUE**

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this is a civil action arising under the Patent Act.

5. This Court has personal jurisdiction over Tesla. Tesla has continuous and systematic business contacts with the State of Texas, including with the Eastern District of Texas. Tesla, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including through interactive web pages) the Powerpack in the State of Texas and the Eastern District of Texas.

6. Tesla, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed its infringing Powerpack into this District and into the stream of commerce with the intention and expectation that the Powerpack will be purchased for use in this District. Tesla has offered and sold and continues to offer and sell the Powerpack for delivery and use in this District.

7. Venue is proper in this Court under 28 U.S.C. § 1400(b) because Tesla has a regular and established place of business in this District and has committed acts of infringement in this District.

8. Tesla occupies several permanent, physical places within this District from which it conducts business. For example, Tesla has physical stores, including in some cases service centers as well, in the following locations in this District: (1) 5800 Democracy Drive, Plano, Texas, 75024; (2) 7500 Windrose Avenue Space B185, Plano, Texas, 75024; and (3) 3408 S SW Loop 323, Tyler, Texas, 75701.



Tesla Gallery and Service Center located at 5800 Democracy Drive, Plano, Texas, 75024

9. As another example of permanent, physical places within this District from which Tesla carries out its business, Tesla has a number of Supercharger stations in this District, including at least the following: (1) Texarkana Supercharger, 3101 Mall Drive, Texarkana, Texas 75503; (2) Sulphur Springs Supercharger, 300 West Tomlinson Street, Sulphur Springs, Texas 75482; (3) Lindale Supercharger, 17044 I-20, Lindale, Texas 75706; and (4) Nacogdoches Supercharger, 2615 NW Stallings Drive, Nacogdoches, Texas 75964. These Supercharger stations have commercial signage identifying the location as a regular and established place of Tesla's business, are operated by Tesla to provide charging for Tesla vehicles for a fee, and are closely monitored and serviced by Tesla service technicians.

10. Tesla has committed acts of infringement in this District by offering for sale and selling the Powerpack for delivery, installation and use in this District, including through sales made to Electrify America. Pursuant to these sales, Tesla has delivered, installed (either itself or through authorized agents), and used (at least for testing) Powerpacks at multiple locations in this District, including (1) 602 South Jefferson Avenue, Mt. Pleasant, Texas 75455 and (2) 2750 West University, Denton, Texas 76201. Tesla also has induced infringement within this District by regularly servicing (either itself or through authorized agents) Powerpacks at multiple locations in this District, including the foregoing locations.



Electrify America charging station located at 602 S. Jefferson Avenue, Mt. Pleasant, TX 75455

Powerpacks

Tesla has further induced infringement in this District by providing manuals and documentation teaching use of the infringing Powerpacks, as well as by providing software to owners and/or operators of Powerpacks located in this District that enable the owners and/or operators to (1) monitor and control the Powerpack, including site energy consumption in real time; (2) view a live graph of daily, weekly, monthly or annual energy generation and consumption, as well as Powerpack charge and discharge activity; and (3) receive real-time notifications of power outages and knowledge of when Powerpack begins powering at the installation site.

## COUNT I

**(Infringement of U.S. Patent No. 10,008,869)**

11. On June 26, 2018, the United States Patent and Trademark Office duly issued U.S. Patent No. 10,008,869, entitled "SUPPLY NETWORK COMPONENT FOR A SUPPLY NETWORK" (the "'869 patent"). A true and correct copy of the '869 patent is attached hereto as Exhibit A. The '869 patent is directed to an energy storing component that communicates with and transfers electrical energy to at least one further energy storing component for a supply network.

12. The '869 patent has been in full force and effect since its issuance. Unicorn owns by assignment the entire right, title, and interest in and to the '869 patent, including the right to seek damages for past, current, and future infringement thereof.

13. Tesla began selling and offering to sell the Powerpack in or about September 2016. Tesla manufactures the Powerpack in the United States.

14. Tesla has infringed and continues to infringe the '869 patent, including at least claims 1 and 27, pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling, exporting from, and/or exporting into the United States Tesla's Powerpack, without authority or license.

15. Tesla indirectly infringes the '869 patent, including at least claims 1 and 27, pursuant to 35 U.S.C. § 271(b), by (among other things) and with specific intent or willful blindness, actively aiding and abetting infringement by others, such as Tesla's partners, customers and end-users, in this District and elsewhere in the United States. For example, Tesla's partners, customers and end-users directly infringe through their use of the inventions claimed in the '869 patent. Tesla induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Powerpack, and providing instructions, documentation, and other information to customers and end-users informing them to use the Powerpack in an infringing manner, including on-site technical support and services, online technical support, training, marketing, product manuals, and advertisements, and providing software and mobile applications enabling customers and end-users to control and operate the Powerpacks. As a result of Tesla's inducement, Tesla's partners, customers and end-users use the Powerpack in the way that Tesla intends and that directly infringes the '869 patent. Tesla has known of the '869 patent, and that the Powerpack infringes the '869 patent, or has been willfully

blind to such infringement, since at least the filing of this Complaint. Despite this knowledge of the '869 patent and that the Powerpack infringes the '869 patent, Tesla has continued to perform these affirmative acts with the intent, or willful blindness, that the induced acts directly infringe the '869 patent.

16. Tesla also indirectly infringes the '869 patent, including at least claims 1 and 29, pursuant to 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers and end-users, in this District and elsewhere in the United States. Tesla's affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Powerpack and causing the Powerpack to be manufactured, used, sold, and offered for sale, contribute to Tesla's customers' and end-users' use of the Powerpack, such that the '869 patent is directly infringed. The Powerpack is a material part of the invention of the '869 patent, is not a staple article or commodity of commerce, has no substantial non-infringing use, and is known by Tesla to be especially made or adapted for use in the infringement of the '869 patent. Tesla has known of the '869 patent, and that the Powerpack infringes the '869 patent, or has been willfully blind to such infringement, since at least the filing of this Complaint. Despite this knowledge of the '869 patent and that the Powerpack infringes the '869 patent, Tesla has continued to perform these affirmative acts with knowledge of the '869 patent and with intent, or willful blindness, that they cause the direct infringement of the '869 patent.

17. Claim 1 of the '869 patent is reproduced below with the addition of labels [a], [b], [c], [d], and [e] corresponding to limitations of the claim.

    1. An energy storing component for a supply network for electrical energy as a network medium, comprising:

[a] at least one contact unit for contacting a further energy storing component of the supply network;

[b] an energy store comprising at least one battery cell, and

[c] at least one gateway for coupling the at least one contact unit with the energy store,

[d] wherein the at least one contact unit has a communication interface for communicating with a further energy storing component of the supply network and a transport interface for transporting the electrical energy to the further energy storing component;

[e] wherein the energy storing component comprises at least one switch for separating the energy store from the network medium, the energy storing component being configured to cooperate with the communication interface such that the energy storing component is separated from the network medium in response to an autonomous identification of incompatibility of the energy storing component with the present supply network.

18. The Powerpack embodies each and every limitation of at least claims 1 and 27 of the '869 patent, literally or under the doctrine of equivalents, as described in the non-limiting examples set forth below. These non-limiting examples are preliminary and are not intended to limit Unicorn's right to modify these non-limiting examples or allege that other aspects of the Powerpack infringe the identified claims, or any other claims, of the '869 patent.

**"1.     An energy storing component for a supply network for electrical energy as a network medium, comprising:"**

19.     The Powerpack typically has at least sixteen energy storing components, referred to as pods, each with an isolated DC/DC converter. The architecture of the Powerpack's energy storing components and onboard power electronics optimize performance across the array and enable easy swapping of energy storing components. An energy storing component of the Powerpack is identified in the image below.



**"[a]     at least one contact unit for contacting a further energy storing component of the supply network;"**

20.     Each energy storing component of the Powerpack has a contact unit that includes a communication interface that communicates data and an transport interface that transports electrical energy. The contact unit is connected to other energy storing components of the Powerpack via a central line, or system bus. The contact unit, communication interface, and transport interface are identified in the image below.



"[b]    an energy store comprising at least one battery cell, and"

21.     Each energy storing component of the Powerpack has one or more battery cells.

"[c]    at least one gateway for coupling the at least one contact unit with the energy store,"

22.     Each energy storing component of the Powerpack has an isolated DC/DC converter that can convert between a low-voltage battery DC and a high-voltage bus DC. The DC/DC converter is used for DC/DC conversion to and from the battery of each individual energy storing component, and transmits voltage to the bus through the contact unit.  Accordingly, the DC/DC converter serves as a gateway that couples the battery with the contact unit (and thereby to the central bus).

**"[d]   wherein the at least one contact unit has a communication interface for communicating with a further energy storing component of the supply network and a transport interface for transporting the electrical energy to the further energy storing component;"**

23. Each energy storing component of the Powerpack has a contact unit that includes a communication interface and a transport interface. The contact unit is connected to other energy storing components of the Powerpack via a central line, or system bus. The communication interface communicates data to other energy storing components and the transport interface transports electrical energy to other energy storing components. The contact unit, communication interface, and transport interface are identified in the image following paragraph 15 above.

**"[e]   wherein the energy storing component comprises at least one switch for separating the energy store from the network medium, the energy storing component being configured to cooperate with the communication interface such that the energy storing component is separated from the network medium in response to an autonomous identification of incompatibility of the energy storing component with the present supply network."**

24. Each energy storing component of the Powerpack has an isolated DC/DC converter. The isolated DC/DC converter includes at least one switch, which can be used to separate the energy store (i.e., one or more battery cells) from the network medium (i.e., electrical energy).

25. Each isolated DC/DC converter is configured to cooperate with the communication interface. Each isolated DC/DC converter includes battery management hardware that can communicate with the rest of the network about the health and power of the battery cell in the

energy storing component. This communication is facilitated by the communication line located within the contact unit.

26. The isolated DC/DC converter itself (i.e., autonomously) identifies incompatibility of the energy storing component with the electrical energy network based on one or more signals received by the energy storing component from the system bus. Upon such identification of incompatibility, and as determined by the converter circuitry of the DC/DC converter based on the one or more signals, the converter circuitry interrupts the flow of electricity from the one or more battery cells in the energy storing component to the electrical energy network.

27. Claim 27 of the '869 patent is reproduced below with the addition of labels [a], [b], [c], [d], [e], and [f] corresponding to limitations of the claim.

> 27. An energy storage block for a supply network for electrical energy as a network medium, wherein the energy storage block comprises:
>
> [a]   a plurality of energy storing components for a supply network for electrical energy as a network medium, each supply network component comprising:
>
> [b]   at least one contact unit for contacting a further energy storing component of the supply network;
>
> [c]   an energy store comprising at least one battery cell, and
>
> [d]   at least one gateway for coupling the at least one contact unit with the energy store;
>
> [e]   wherein the at least one contact unit has a communication interface for communicating with a further energy storing component of the supply network and a transport interface for transporting the electrical energy to the further energy

storing component, wherein the plurality of supply network components are connected in parallel or in series with one another;

[f] wherein each of the energy storing components comprises at least one switch for separating its respective energy store from the network medium, each of the energy storing component being configured to cooperate with the communication interface such that the respective energy storing component is separated from the network medium in response to an autonomous identification of incompatibility of the respective energy storing component with the present supply network.

**"27. An energy storage block for a supply network for electrical energy as a network medium, wherein the energy storage block comprises:"**

28. The Powerpack includes an energy storing block typically having at least sixteen energy storing components, referred to as pods, each with an isolated DC/DC converter. The architecture of the electronic storing components and onboard power electronics optimize performance across the array and enable easy swapping of electronic storing components. The energy storing block of the Powerpack is identified in the image below.



29. The remaining limitations of claim 27 are satisfied by the non-limiting examples set forth in paragraphs 19 through 26 above, except for limitation [e] which recites the following additional language not found in the corresponding limitation of claim 1: "wherein the plurality of supply network components are connected in parallel or in series with one another." The Tesla Powerpack satisfies this limitation because the supply network components are connected in parallel.

30. Unicorn has been damaged as a result of Tesla's acts of infringement in an amount subject to proof at trial.

31. Tesla's infringement of the '869 patent from and after the filing of this Complaint is willful, making this an exceptional case that warrants an award of attorneys' fees to Unicorn pursuant to 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

WHEREFORE, Unicorn prays for a judgment in its favor and against Tesla and respectfully requests the following relief:

13

    A.    A judgment that Tesla infringes the '869 patent;

    B.    Damages for infringement of the '869 patent in an amount to be determined at trial;

    C.    An order permanently enjoining Tesla from further infringement of the '869 patent;

    D.    For other monetary relief, including costs and expenses and pre- and post-judgment interest;

    E.    A determination that Tesla's infringement of the '869 patent patents has been and is willful from and after the filing of this Complaint, and an award of enhanced damages, up to and including trebling of the damages awarded to Unicorn;

    F.    A determination that this is an exceptional case under 35 U.S.C. § 285 and an award of attorneys' fees and costs to Unicorn;

    G.    An order awarding Unicorn any such other relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Unicorn hereby demands a jury trial as to all issues so triable.

Date: October 26, 2020

CAPSHAW DERIEUX, LLP

/s/ *Elizabeth L. DeRieux*
Elizabeth L. DeRieux
Texas State Bar No. 05770585
114 East Commerce Avenue
Gladewater, Texas 75647
(903) 845-5770
ederieux@capshawlaw.com

*Attorneys for Plaintiff*
*Unicorn Energy GmbH*

.

OF COUNSEL:
David I. Gindler
Gary N. Frischling
David C. Jonas
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067-3019
(424) 386-4000

Sean Hyberg
MILBANK LLP
55 Hudson Yards
New York, NY 10001-2163
(212) 530-5000