IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UNICORN ENERGY GMBH, § § § *Plaintiff*, § § v. § § TESLA, INC., § § *Defendant*. § § § | CIVIL ACTION NO. 2:20-CV-00338-JRG |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Tesla, Inc.'s ("Tesla") Amended Motion to Transfer Venue to the Northern District of California Under 28 U.S.C. § 1404 (the "Motion"). (Dkt. No. 37). Having considered the Motion, the subsequent briefing, and for the reasons set forth herein, the Court is of the opinion that the Motion should be **GRANTED**.

**I.    BACKGROUND**

On October 26, 2020, Plaintiff Unicorn Energy GMBH ("Unicorn") filed this single-patent case against Tesla accusing Tesla's Powerpack of infringing Unicorn's patent, U.S. Patent No. 10,008,869 (the "'869 Patent"). (Dkt. No. 1). Contemporaneous with its answer (Dkt. No. 13), Tesla filed a motion to transfer venue to the Northern District of California (the "Northern District") on December 17, 2020 (Dkt. No. 12). A scheduling conference was held on January 20, 2021 and a docket control order was issued on February 8, 2021 setting deadlines for venue-related discovery. (Dkt. No. 27). After venue-related discovery, Unicorn filed an amended complaint on February 9, 2021 accusing additional Tesla products of infringement—Tesla's Megapack and Powerwall products (together with Tesla's Powerpack, the "Accused Prodctus"). (Dkt. No. 29).

Tesla answered the amended complaint and filed the instant amended motion to transfer venue. (Dkt. Nos. 37, 38).

## II.  LEGAL STANDARD

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of conflict of laws." *Id.*

In order to support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current District. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").

## III.  DISCUSSION

The Court first addresses the private interest factors followed by the public interest factors.[1] The Court finds that both sets of factors favor transfer to the Northern District.

### A.  Private Interest Factors

**The Relative Ease of Access to Sources of Proof.** The first private interest factor this Court analyzes is the relative ease of access to sources of proof, including documentary and other physical evidence. *See id.* Notwithstanding well-known advances in technology and the

---

[1] Unicorn concedes that it could have brought suit in the Northern District of California. (Dkt. No. 43 at 6). Accordingly, the Court need not specifically address this threshold inquiry.

2

digitization of data, the courts of appeals nonetheless continue to affirm the relevance and importance of the physical location of these sources.  *See id.* at 316; *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).  Parties must specifically identify and locate sources of proof and explain their relevance.  *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-513, 2018 WL 2329752, at *5 (E.D. Tex. May 22, 2018); *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.10 (5th Cir. 2017).

Tesla argues that this factor strongly favors transfer, as all of its relevant documents in this case (design, research, development, design and engineering, marketing, sale, and financial accounting) are in or near its headquarters in Palo Alto, CA, including its firmware and source code. (Dkt. No. 37 at 9).  Tesla further argues that it "does not possess any documents related to the Accused Products, or relevant to this case in general, that are physically located in this District." (*Id.* at 5, 10).  Tesla contends that there are no operating Powerpacks or Megapacks in the Eastern District. (*Id.* at 10).  Specifically, "there has not been a single sale, offer for sale, or installation of Tesla's" accused Powerpack or Megapack products in this District, and the number of Powerwalls installed in the Northern District far exceeds the number installed in this District. (*Id.* at 1; Dkt. No. 37-2 at ¶ 15).  Tesla also notes that Unicorn has no evidence or connections to the Eastern District as it is a German company. (Dkt. No. 37 at 10).

Unicorn argues that this factor is neutral because "the presence of other relevant documents in the District (e.g., records of Powerwall installations in the District, communications with customers and certified Tesla partners in the District) renders this factor neutral." (Dkt. No. 43 at 8).  Unicorn's response focuses on Tesla's Powerwalls—arguing that Tesla sells Powerwalls in this District at its showrooms and has shipped over 500 Powerwalls to this District with at least 129 installed for use. (*Id.* at 6).  Unicorn relies on these 129 Powerwall installations to support its

claim that documents from certified installers are located in this District.  (*Id.* at 7).  In addressing the other accused products, Unicorn argues that Tesla's assembly and manufacturing of its Powerpacks outside of the Northern District weighs against transfer.  (*Id.* at 7 n.4).  Unicorn also emphasizes that all of Tesla's documents are likely digital because "every document produced by Tesla during venue discovery came via secure online file transfer."  (*Id.* at 7).

The Court is persuaded that this factor slightly favors transfer.  Tesla has put forth evidence showing that many of its documents relevant to this case are in the Northern District, including its source code and research, development, design, and engineering documentation related to the Accused Products.  (Dkt. No. 37 at 9) (citing Dkt. No. 37-2 ¶ 12).  While the Court agrees with Unicorn that most of this information will likely be electronically transferred in this case, it is clear that, under current precedent, such realities do not prevent this factor from weighing in Tesla's favor.  *Volkswagen II*, 545 F.3d at 316; *Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).  The cases cited by Unicorn are not to the contrary.  (Dkt. No. 43 at 7) (citing *Stingray Music USA, Inc. v. Music Choice*, No. 2:16-cv-964, 2017 WL 1022741, at *3 (E.D. Tex. Mar. 16, 2017); *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118, 2019 WL 6344267, at *4 (E.D. Tex. Nov. 27, 2019).  The Court also finds that Unicorn's arguments related to Tesla's "records of Powerwall installations in the District, communications with customers and certified Tesla partners in the District" (Dkt. No. 37 at 9) do not change its analysis of this factor.  Information from third-party installers and customers are just as available—if not more so—in the Northern District.

For these reasons, the Court finds that this factor slightly favors transfer to the Northern District.

**The Availability of Compulsory Process to Secure the Attendance of Witnesses.**  The second private interest factor considers the transferor and transferee courts' subpoena power.

Federal district courts have the absolute power to compel attendance of a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A).  Federal district courts have trial subpoena power over a person "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is a party or a party's officer; or . . . [if the person] is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). Party witnesses are generally deemed to be willing witnesses, so this factor is directed more to third-party witnesses. *C&J Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-cv-00079, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019).

Tesla argues that this factor favors transfer because "former Tesla employees with relevant knowledge are likely to be located in the Northern District because the design, development, management, and decision making for Tesla's Accused Products has historically been centered in Palo Alto, CA." (Dkt. No. 37 at 10). Tesla claims that the prior art cited on the face of the '869 Patent reveals that "there are third parties with knowledge of the prior art in California" but not in Texas. (*Id.* at 11). Tesla also argues that some of its own patents are likely to serve as material prior art in this case and the inventors of such prior art are located in Northern California, and "[o]nly the Northern District would have the ability to compel these former Tesla employees and third-party inventors to appear at trial." (*Id.*).

Unicorn again responds with reference to Tesla's installers and partners in this District. Unicorn contends that "testimony of at least some of these parties will be relevant to showing Tesla's acts of inducing and contributory infringement, underlying acts of direct infringement, and damages." (Dkt. No. 43 at 8). Unicorn concedes that there also are installers and customers in the Northern District but responds that "Tesla does not get to pick which third-party witnesses Unicorn

5

Energy would prefer to offer at trial." (*Id.* at 9). Unicorn notes that in arguing former employees may need to testify, Tesla "does not claim they have any unique knowledge." (*Id.* at 10). Further, Unicorn argues that even if the prior art identified by Tesla is material, "Tesla has offered no reason why this third party testimony would even be presented at trial." (*Id.* at 11) (citing *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-cv-474, 2019 WL 3082314 (E.D Tex. July 15, 2019)).

The Court is persuaded that this factor is neutral. Tesla's argument that former employees may need to testify is speculative and not based on any unique knowledge those former employees may possess. The Court also is not persuaded that the location of prior art inventors merits enough weight to tip this factor in Tesla's favor. Unicorn's arguments suffer from similar deficiencies. Without more, the presence of installers and customers in both this District and the Northern District does not push this factor in either direction. Unicorn has not presented any evidence showing that discovery from third-party installers and customers may be relevant—particularly those in this District. Unicorn vaguely claims this discovery is relevant for inducement and contributory infringement, underlying acts of direct infringement, and damages—but this claim is also conclusory.

For these reasons, the Court finds that this factor is neutral.

**Cost of Attendance for Willing Witnesses.** The third private interest factor considers the cost of attendance for willing witnesses. The Federal Circuit has described this factor as being especially important. *Genentech*, 566 F.3d at 1343. The Fifth Circuit has established a so-called "100- mile rule": when the distance between the transferor and proposed transferee venues exceeds 100 miles, "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 201; *Genentech*, 566 F.3d at 1343.

Tesla argues that this factor strongly favors transfer. (Dkt. No. 37 at 11). Tesla points out that it has provided a long list of witnesses it believes may be required to testify at trial. (*Id.* at 3–5, 12). Tesla asserts that all of its identified potential witnesses are located in and around Northern California. (*Id.* at 11–12). Tesla contends that the current Tesla employees Unicorn identified at Tesla facilities in this District have nothing to do with the design, development, manufacturing, marketing, sales, and financial accounting of the Accused Products. (*Id.* at 13).

Unicorn responds that the convenience of party witnesses is to be given little weight and Tesla presents no information on the costs of attendance for non-party witnesses. (Dkt. No. 11) (citing *Seven Networks, LLC v. Google LLC*, No. 2:17-CV-00442, 2018 WL 4026760, at *9 (E.D. Tex. Aug. 15, 2018)). Unicorn then argues that its witnesses will have to travel to the United States from Germany to testify at trial and that this distance will increase by several hundred miles if the case is transferred to the Northern District. (*Id.* at 11–12) (citing the Fifth Circuit's "100-mile rule"). Unicorn further contends that the difference in time zones between this District and the Northern District will increase the difficulty in overcoming "jet lag." (*Id.* at 12). Unicorn also notes that other costs such as food and lodging are substantially less expensive in this District than the Northern District. (*Id.*).

The Court finds this factor slightly favors transfer. Unicorn is correct, as this Court has observed, that other courts in the Fifth Circuit have noted that the convenience of party witnesses is given little weight. *Seven Networks*, 2018 WL 4026760, at *9. However, neither party identified any willing non-party witnesses. The Court finds Unicorn's emphasis of the 100-mile rule within this context and claims of "jet lag" less than compelling. Unicorn's German witnesses will need to travel a long distance regardless of whether this case in this District or the Northern District, and the Federal Circuit has cautioned against such a rigid application of the 100-mile rule—

7

especially as to foreign witnesses traveling from overseas. *Genentech*, 566 F.3d at 1344. Tesla has provided an expansive list of witnesses it predicts may be called at trial, and Tesla has shown that all those witnesses live in the proposed transferee venue, the Northern District. Unicorn, on the other hand, has not identified any willing witnesses in this District. Unicorn is correct, however, that other trial costs (such as food and lodging) are likely to be substantially less expensive here than in the Northern District. Nonetheless, given the particular identification of Tesla witnesses located in the Northern District and the absence of Unicorn witnesses here, the Court is persuaded this factor slightly favors transfer.

**All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive**. The fourth private interest factor addresses concerns rationally based on judicial economy. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-00118, 2019 WL 6344267, at *6 (E.D. Tex. Nov. 27, 2019); *see also In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

Tesla argues that this factor is neutral, for the Northern District is just as equipped to hear this case as this District and the events that have occurred to-date would have also occurred in the Northern District. (Dkt. No. 37 at 13). Unicorn responds that because it is cheaper to litigate a case in this District than the Northern District, this factor weighs against transfer. (Dkt. No. 43 at 12–13). Considering the facts of this case, the Court finds that this factor is neutral.

B.   **Public Interest Factors**

**Administrative Difficulties Flowing from Court Congestion.**  The first public interest factor concerns the speedy and efficient administration of justice. Tesla argues that this factor is neutral, but also argues that the "speed with which the case may be resolved is not significantly different in either district." (Dkt. No. 37 at 15). Unicorn argues this factor weighs significantly against transfer and cites precedent from this Court in support. (Dkt. No. 43 at 13) (citing *AGIS Software Dev. LLC v. HTC Corp.*, No. 2:17-CV-00514, 2018 WL 4680557, at *9 (E.D. Tex. Sept.

8

28, 2018); *Intertrust Techs. Corp. v. Cinemark Holdings, Inc.*, No. 2:19-CV-00266, 2020 WL 6479562, at *6 (E.D. Tex. Sept. 30, 2020)). However, in the cases cited by Unicorn, the Court found the factor weighed "slightly" or "fairly" against transfer—not "significantly" as Unicorn suggests. Nonetheless, the Court agrees with both Tesla and Unicorn that the time to trial for patent cases is, on average, many months faster in this district. Accordingly, the Court finds this factor fairly weighs against transfer.

**Local Interest in Having Localized Interests Decided at Home.** Tesla argues this factor strongly weighs in favor of transfer because "Tesla is headquartered in the Northern District and the design, development, management, and decision making related to the Accused Products have historically been centered there." (Dkt. No. 37 at 14). Unicorn argues that this factor is neutral because infringing sales have allegedly taken place in this District and more than 70 employees are located in this District. (Dkt. No. 43 at 14). The Court is persuaded that based on the facts before it, this factor slightly favors transfer.

**Familiarity with Law and Conflicts of Law.** Both Tesla and Unicorn agree that these factors are neutral. The Court agrees.

IV.   **CONCLUSION**

For the reasons stated herein and the specific facts of this particular case, the Court finds that Tesla's Motion should be **GRANTED**.

V.   **ORDER**

It is hereby **ORDERED** that the above-captioned case is **TRANSFERRED** to the Northern District of California. The Clerk is directed to transfer this case as directed herein forthwith.

9

**So ORDERED and SIGNED this 3rd day of September, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE